Dean L. Phillips v. Commissioner.Phillips v. CommissionerDocket Nos. 18410, 18411, 18412.United States Tax Court1950 Tax Ct. Memo LEXIS 179; 9 T.C.M. (CCH) 501; T.C.M. (RIA) 50151; June 9, 1950Willard L. Phillips, Esq., Commercial Bldg., Kansas City, Kan., for the petitioner. Elmer L. Corbin, Esq., for the respondent. DISNEYMemorandum Findings of Fact and Opinion DISNEY, Judge: These cases, duly consolidated, involve income taxes. Deficiencies were determined as follows: For 1944, $962.19 with 50 per cent penalty of $481.10; for 1945, $1,062.13, with 50 per cent penalty of $531.07 and 25 per cent penalty of $265.53; for 1946, $369.67, with 50 per cent penalty of $184.84. The question presented is whether there was error in disallowance of certain deductions for expenses, or error in addition of the 50 per cent or the 25 per cent penalty. We make the following Findings of Fact The petitioner, a resident of Independence, *180 Missouri, filed his Federal income tax return for 1944 at Salt Lake City, Utah; for 1945 and 1946 at Baltimore, Maryland. Petitioner, during the taxable years, was married and lived with his wife and children in Alexandria and Arlington, Virginia. During 1944 his wife was, for part of the year, with her parents and his parents. During 1945 and 1946 she was with him practically all of the time. They had an apartment. His post of duty was at Washington, D.C. He considered that his home during all of that time was at Salt Lake City, Utah. About April 15, 1946, he moved to Kansas City, Missouri, but did not move his family there from Arlington, Virginia, until June 1946. During 1944, 1945 and 1946 he was employed by Transcontinental & Western Air, Inc. (hereinafter sometimes called TWA). His duties were those of a flight officer, either pilot, co-pilot or navigator. He was employed under written contract dated September 1, 1942. His contract provided that he should receive per diem allowance of $8 per day for expenses on flights outside the continental United States and $6 per day within the continental limits of the United States; time to be figured by quarter days. During the taxable*181 years he flew all of the TWA routes and was in all of the bases of the Air Transport Command, with which TWA was under contract. At the bases to which he flew, facilities for sleeping and food were not adequate. There were barracks on each base and the company made a service charge of $3 regardless of whether he stayed on the base. That charge enabled him to sleep in the quarters at the base for one night. The sleeping accommodations were usually a cot. There was little privacy from noise, or opportunity to get sleep and he felt that he could not get normal sleep at the bases. He often went into the cities adjacent to the bases for accommodations instead of staying at the bases. The cost of transportation from the base to the city varied from $1 to $5 in American money. The hotel situation in the foreign cities was such that getting accommodations was a matter of paying the price asked for whatever he could get. The hotel charges were more than in the United States. A dinner usually cost from $3 to $5, breakfast from 50 cents to $2.50, and hotel accommodations from $5 to $14 a night. He kept a log of his time during the taxable years. This was prepared during each flight because*182 a copy had to be turned in at the end of every flight. It was certified by a company official. His log book showed foreign travel time as follows: 1944, 169 days; 1945, 162 days; and 1946, 58 days; also domestic travel, 119 days in 1946. These figures included in full the day of departure and day of arrival of each flight. The records of TWA showed petitioner's foreign travel time, in days, as follows: 1944, 136 1/4; 1945, 157; and 1946, 54; and domestic travel time as follows: In 1944, 13 days; 1945, 2 1/4 days; 1946, 91 days. TWA records also showed reimbursement, on the basis of such figures, as follows: 1944, $1,090.10; 1945, $1,255.50; and 1946, $1,046.15. Petitioner's income tax returns for the years 1944, 1945 and 1946 were made out by one Nimro of the Maury-Henry Company, Washington, D.C. He went to that company upon the recommendation of a man with whom he flew. He had made a telephone appointment before he went and was told to bring his records with him. He took what records he had, including his log books, all receipts that he had, cancelled checks, stubs from salary and expense checks, and an income tax form furnished him by the company. All of these he left with Nimro. *183 At the Maury-Henry office he saw desks and men and girls working, file cases, and bookcases with books of legal appearance. The place appeared to be busy. He had a conversation with Nimro and told him all of the facts pertaining to his income and expenses. He did not tell Nimro that he wanted to claim any particular item as a deduction. Nimro asked him a number of questions and petitioner told him the truth about them. Nimro told him that he was entitled to foreign travel deductions of about $15 a day for every day that he was out of the country, and that he was entitled to the difference in his living expenses in Washington over what they would have been if he had been living in his home in Salt Lake City. Petitioner never discussed the matter with any attorney, or any other person familiar with income tax law, or with any other person. He had never read the income tax law and had been able to glean very little from the instructions, though he read them before he signed his returns. As to each year, when he left Nimro, they had gone over the work sheets of his returns. He received the return for 1944 after it was completed. The return for 1945 he signed in blank due to the fact that*184 he was going to be out of the country over the income tax dead-line period. He went over the returns after receiving them. They were made out in accordance with the information that he left with Nimro. The petitioner left his records with Nimro and has never recovered them. They were in the custody of representatives of the Commissioner of Internal Revenue, when a public accountant representing petitioner went to Washington to investigate. The accountant found Nimro's office closed. Though he saw the records, they were refused him by such representatives. Petitioner attributed the difference between the figures in his log book and those of the TWA, in part to the fact that the company had omitted in some cases complete trips and to the fact that he considered that he was on foreign travel when he left Washington, D.C., but TWA considered it to start when he left the continental United States. Petitioner's returns for the taxable years were all signed by him. They all showed place of employment as Kansas City, Missouri. The return for 1944 was filed March 15, 1945; for 1945 on December 4, 1946. The filing date on the return for 1946 is illegible, but the return was sworn to on*185 March 11, 1947. Petitioner's return for 1944 shows that he filed a return for 1943 at Baltimore, Maryland. For 1944 the return reported $3,415.35 as received from TWA and other income of $151.93, totaling $3,567.28. The $3,415.35 is explained as follows: Home: Salt Lake City, Utah.Attachment to 1944 Federal Income Tax Returnof Dean L. Phillips, 1136 S. Wakefield Street,Arlington, VirginiaGross Salary$6,700.00Deductible ExpenseTravel Expense U.S. - Wilming-ton, Philadelphia, New York,Chicago, Denver, Burbank, Phoe-nix, Miami, Maine, Boston, D.C.,Virginia.Hotel - Lodging661.00Meals871.00Foreign - South America,Bermuda, Newfound-land, British Isles,France, Azores, Africa160 days at $12.001920.00Business Car.Gas 72.00Grease - Oil 27.50Park - Wash 52.00Repairs349.00Depr. 250.50Tags 20.80Ins. 35.45807.25Supplies161.504420.75Less Reimbursement1136.10Total Ded. Exp.3284.653,284.65Net Salary$ 3,415.35The item of $349 on the return for 1944 was for complete motor overhaul which was due to the fact that the petitioner found it necessary because he left his car at the airport and while*186 he was on a trip it froze. He used his car only in going to and from the airport. In his determination of deficiencies for 1944 the Commissioner disallowed traveling expense of $3,284.65, and added to income "reimbursement income" of $284, with the explanation, in effect, that the taxpayer was considered on foreign duty 142 days instead of 160 as claimed; that hotel lodging was disallowed in the amount of $661, anad meals disallowed in the amount of $871; and that items of foreign travel $1,920, car expenses $807, and supplies $161.75 were personal expenses. The car expenses and supplies were disallowed on the basis that the employer furnished all transportation and supplies. Reimbursement income of $284 was included in income "to reflect the profit made from his reimbursement since actual expenditures were less than $6 per day while overseas." Therefore, there was disallowed a total of $4,420.75, less reimbursement of $1,136.10 as claimed, making a net disallowance of $3,284.65. For 1945 petitioner reported $5,299.62 as received from TWA, with explanation as follows: Attachment to 1945 Income Tax ReturnforDean L. Phillipsc/o Maury-HenryCompany1811 H St., N.W.Washington, D.C.Gross Salary (Per Contract) TWA8706.42Partial Travel Reimbursement (Per Con-tract)893.509599.92Expenses - U.S. Travel - 163 daysMiami, New York, Chicago, KansasCity, Denver, Albuquerque, Bur-bank, Pheonix, Washington,Baltimore, VirginiaHotel at3.50Meals4.00Cabs to & from Port1.50Telephone (reports).40Tips & Misc..50163 days at9.901613.70Equipment, replacements180.00R.R., Plane, Car Travel9600 miles at 5"480.00Dues60.00Supplies, (Navigation) & Sub-scriptions90.60Liability Insurance52.00Equipment, Maintenance144.00Foreign Travel: - 112 daysNewfoundland, Labrador, Bermuda,Azores, British Isles, France, Italy,Greece, Egypt, Iran, India, Africa,Iceland, Greenland112 days at 15.001680.004300.305299.62*187 For 1945 the Commissioner, in the notice of deficiency, disallowed travel and business expenses in the amount of $4,300.30, with the explanation, in substance, that petitioner's foreign travel was 112 days with reimbursement at $8 a day; that his actual expenditures did not exceed $6 per day; and that on that basis the following adjustment was made: U.S. traveling expenses disallowed$1,613.70Equipment, replacements - disallowedbecause all equipment was furnishedby taxpayer's employer180.00Railroad, plane, car travel - disallowedon the basis of personal travelingexpenses since the taxpayer wouldhave been reimbursed had they beenincurred for official travel480.00Dues, disallowed60.00Supplies and subscriptions - disallowedbecause not deductible in arrivingat adjusted gross income90.60Liability insurance disallowed - Thisrepresents a personal life insurance52.00Equipment maintenance disallowed144.00Foreign travel expenses disallowed -claimed 112 days at $15.00 - $1,680.001,680.00$4,300.305. (a) Traveling expenses al-lowable$893.50Less income for 112days at $2.00224.00$ 669.50After*188 about April 15, 1946, petitioner was in domestic travel, under a different contract, with TWA. He had had a training course. Petitioner's income tax return for 1946 reported $3,869.56 as received from TWA. His place of employment is indicated as Kansas City, Missouri. The explanation attached is as follows: Attachment to 1946 Income Tax Return forDean L. Phillips2916 S. CryslerIndependence, Mo.Soc. Sec. No. 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Wife - BarbaraSon - Dean RobertDaughter - Dawn CarolGross Salary (Per contract) T.W.A.$5,615.86Partial Travel Reimburse. (Per Con-tract)1,036.706,652.56Expenses: U.S. Travel: Washington,Dayton, Pittsburgh, Chicago, Bos-ton, Detroit, Newark, Los Angeles,Albuquerque, New York.Hotels at 3.50Meals at 4.00Cabs to & fromport at 1.50Telephone (re-ports) at.50Tips & Misc. at 1.00120 days at 10.501,260.00Commercial Rat. Tr. 6,000Mi. at 5"300.00Navigational Supplies &Equip.287.00Maintenance Supp. & Equip.86.00R.R. & Plane Tr.54.00Dues28.00Telephone (Required)48.00Foreign Travel: Newfoundland, Azores, France, Bur-muda [Burmese], Italy, Greece, Egypt,England.60 days at 12.00720.002,783.00$3,869.56*189 On petitioner's return for 1946 the item of $300 for " Commercial Rat. Tr. 6,000 Mi. at 5"" represents moving to his training base. The items for "Navigational Supplies & Equip. $287.00" for 1946, or "Equipment, replacements" for 1945 represent maps, computers, plotter, uniforms, navigation kits, and such items. He was required to have them and he actually incurred such expenses. He kept records of navigation expenses and travel. For 1946 the Commissioner's determination of deficiency disallowed traveling expense of $1,746.30, with the explanation in effect that traveling expense had been disallowed in excess of the amount of reimbursement on the basis that all official travel was reimbursed by the employer on an actual expenses basis so that of $2,783 claimed, he disallowed all above the $1,036.70 reimbursement. Opinion We have here for consideration the deductibility of certain expenses claimed, the 25 per cent penalty, for 1945 only, and of the 50 per cent fraud penalty for all years. We dispose at once of the 25 per cent penalty question. There is no evidence thereon except that the return for 1945 was filed December 4, 1946. Under such a record the 25 per*190 cent penalty is, of course, not shown to have been improperly imposed under section 291 (a) for failure to file timely return. With reference to deduction of expenses: The petitioner on brief agrees that all disallowance as to domestic travel was proper except as to three items: (a) Domestic travel after April 1946, after which date petitioner was in the domestic division of TWA and traveled in the United States; (b) automobile expense in 1946 when petitioner was sent from Washington, D.C., to Kansas City, Missouri, to attend training school, and the trip made by him to move his family; and (c) the $349 item for motor overhaul caused by freezing of his car when left at National Airport at Washington, while he was on a flight. This is claimed as loss, "not necessarily as a loss incurred in business, but as a loss of property from storm or casualty. Internal Revenue Code, section 23 (c) (3)." As to item (a): From all of the evidence it is clear that petitioner traveled in the United States in 1946 and had expense therefor. He deducted $1,260 (120 days at $10.50) for domestic travel and $720 for foreign travel. The Commissioner disallowed $1,746.30 travel expense*191 with explanation in effect that actual expense had been reimbursed. Nothing in the record before us shows otherwise, for this item involves only the domestic travel after April 15, 1946. We have no evidence that, in the period in question, his expense was greater than the reimbursement. There is no evidence as to the amount of his expenses on the domestic travel during this period, and it is nowhere separated from the general items of travel. He reported as income from reimbursement almost the same amount as the reimbursement for travel actually received from TWA, and his actual expense is deductible, but the disallowance by the Commissioner of a total of $1,746.30 left petitioner allowed $587.70 since only $2,334 is claimed on the return as travel. The petitioner, although testifying that his domestic contract in 1946 was an entirely different contract from that under which foreign expense was incurred, did not introduce the contract and stated that he did not recall the basis of his employment after April 15, 1946. Obviously we can not say that the Commissioner erred on this item. (b) Automobile expense allegedly involved in petitioner's transfer and removal of family from Washington, *192 D.C., to Kansas City, Missouri, when he was transferred to the domestic division at Kansas City, Missouri, in 1946. The evidence before us discloses only the fact of removal; the amount of expense in connection therewith is nowhere proven with any definiteness or even so designated on the return, or even on brief. It appears to be the item of $300, " Commercial Rat. Tr. 6,000 Mi. at 5" - $300.00," shown on the return. Petitioner testified, as to the $300.00: "We were paid a minimum mileage rate for moving or for moving to our training base, and that is what this item would represent on commercial rate travel." Later, after testifying about the "Navigation Supplies and Equip." item he said he actually had "those expenses," but we can not reasonably apply this to the $300 item. The amount of reimbursement, and the actual expense, is nowhere shown. Even on the doctrine of Cohan v. Commissioner, 39 Fed. (2d) 540, we have nothing at all upon which to base an allowance of such expense. No error by the Commissioner is shown. (c) $349 for motor overhaul in 1944: This can not be allowed as business loss. The car was left at the airport during a flight and the motor*193 froze. Transportation to and from the airport is not allowable and as cost, indirect, of such transportation it can not be allowed. Petitioner seems to so recognize, for he claims this "not necessarily as business loss" but as loss from storm or casualty. Is it allowable as such? We think not. The automobile was not destroyed or stolen. It simply required repair. In Samuel Greenbaum, 8 B.T.A. 75, expense of repair of frozen water pipes was disallowed as casualty loss. Moreover, whether there was compensation from insurance, the actual amount expended for the overhaul, the bill rendered or paid, the value of the car before and after the freezing - all are unproven. The amount was designated on the return, and the testimony was that it was for a complete motor overhaul due to the fact that petitioner found it necessary because of the freezing when left at the airport while he was on a trip. But the evidence here does not demonstrate error by the Commissioner in denying the amount claimed. We next consider the $287 item for navigation supplies and equipment. These were not, as the Commissioner held, furnished by TWA and the expense was actually paid by the petitioner from*194 his own funds, and the items were required for the performance of duty. They consisted of uniforms, navigation instruments, computers, plotters, etc., replacements and maintenance thereof. Uniforms were worn only on duty, and laundering was required. The various items were not satisfactorily proven, but under the Cohan case, supra, and the evidence, we consider that some amounts should be allowed because thereof as deductions, as follows: For 1944, $100; 1945, $250; 1946, $200. Deductions in these amounts are approved. The next question is the amount of expense while on foreign travel. From all of the evidence it is plain, in our opinion, that it was more than the $8 a day reimbursed by TWA. However, we can not accept as accurate the petitioner's figures, for it is not clear how much of the time was spent at hotels, so that though the expense there was much higher than the amount allowed, it should not be allowed as an average. From all of the evidence we conclude and hold that the average expense of foreign travel was $10 a day for 169 days in 1944, 162 days in 1945, and 58 days in 1946. We come now to the principal issue, as to whether the 50 per cent fraud penalty was properly*195 imposed. The burden is upon the respondent. Evidence of fraud must be clear and convincing. Walter M. Ferguson, Jr., 14 T.C. 846 (May 16, 1950). We do not think that fraud has been so proven. The facts are not, in essence, different from those in Charles C. Rice, 14 T.C. 503 (March 30, 1950), another case involving a return filed by a TWA pilot, engaged in the same work as petitioner and employing the same person to prepare returns. So far as the evidence herein shows, that person was qualified to advise on tax matters. He was relied on by the petitioner. The principal question, deductibility of expense of petitioner away from "home" which he claimed as Salt Lake City, Utah, was one along the subject of different views. We can not say that the petitioner, receiving advice that he was entitled to deduct such expense, committed fraud in following such advice. It may have been careless, but carelessness is not fraud. Walter M. Ferguson, Jr., supra; and we are unable to find in the record the necessary clear and convincing evidence that there was fraud by the petitioner. We hold that it is not shown that the deficiencies for the taxable years were*196 due in part to fraud with intent to evade tax. Decisions will be entered under Rule 50.